STATE OF NORTH CAROLINA on relation of JOHN N. BUNTING v. WESTON R. GALES.

*Criminal Court of Wake—Clerk—Office and Officer—Power of General Assembly.*

1. The act of the General Assembly (Acts 1876–'77, ch. 271) establishing a Criminal Court for the County of Wake, is constitutional.

2. The Legislature has the constitutional power to diminish the emoluments of an office by the transfer of a portion of its duties to another office, and in such case the incumbent must submit. He takes the office subject to the power of the Legislature to make such changes as the public good may require.

(*Hoke* v. *Henderson*, 4 Dev 1 ; *Taylor* v. *Stanley*, *Ibid*, 31 ; *Cotten* v. *Ellis*, 7 Jones, 545 ; *King* v. *Hunter*, 65 N. C. 603, cited, distinguished and approved.)

CIVIL ACTION in the nature of a Quo Warranto tried at Spring Term, 1877, of WAKE Superior Court, before *Buxton, J.*

This action was instituted by the relator, John N. Bunting, Clerk of the Superior Court of Wake County, to test the right of the defendant, Weston R. Gales, to hold the office of Clerk of the Criminal Court of Wake County, which Court was created under an Act of the General Assembly. (Laws 1876–'7, ch. 271.) The plaintiff claimed that under the amended Constitution, Art. IV, § 33, the General Assembly

had no right during his term of office to deprive him as Clerk of Wake Superior Court of the fees and emoluments of his office by transferring the entire criminal business to the Criminal Court, and' appointing the defendant as Clerk thereof; but that the plaintiff was entitled to perform the functions and receive the emoluments of Clerk of the Criminal Court until the expiration of his term. The defendant answered and relied upon the amendment to the Constitution conferring upon the General Assembly power to create additional Courts, &c. Const. Art. IV, § 12. The defendant also alleged that on account of the press of criminal business in the Superior Court of Wake County, there was an urgent public necessity for the establishment of the Criminal Court. The plaintiff filed a demurrer to the answer. His Honor gave judgment overruling the demurrer and dismissing the action and the plaintiff appealed.

*Messrs. E. G. Haywood, D. G. Fowle, Busbee & Busbee, Walter Clark, G. H. Snow* and *T. M. Argo,* for plaintiff.
*Messrs. W. N. H. Smith* and *Battle & Mordecai,* for defendant.

RODMAN, J. It will not be necessary for the decision of this case to review the judgment in *Hoke* v. *Henderson,* 4 Dev. 1. In this case the Legislature has not put another man in the office of the plaintiff. It has merely created another Court and transferred to it a portion of the jurisdiction of the Superior Court of Wake, of which plaintiff is Clerk, and appointed the defendant, Clerk of the new Court, thereby incidentally depriving the plaintiff of certain fees which, but for the establishment of such new Court with a separate Clerk, the plaintiff would have received. It has done this under a clause of the Constitution which authorizes the Legislature to establish such Courts whenever the public welfare requires it.

It is admitted that a lucrative public office is private property, of which no one can be divested except by the law of the land; and it may also be admitted so far as this case is concerned, that after a law has once fixed the tenure of the office, a subsequent Act of the Legislature cannot alter the tenure to the detriment of persons then in office; *e. g.* by converting it from an office during good behaviour, or for four years, into an office for two years. This was the decision in *Hoke* v. *Henderson*, and in *Taylor* v. *Stanley*, 4 Dev. 1, 31.

It may also be admitted that the Legislature cannot select a particular officer, and by a special law applicable to him alone, deprive him of any material part of his duties and emoluments. This partakes of the nature of a judicial forfeiture without a trial. This was the case of *King* v. *Hunter*, 65 N. C. 603. Neither can the Legislature take away the entire salary of an officer. *Cotten* v. *Ellis*, 7 Jones, 545.

But a public office is property of a peculiar nature. It is said in the opinion of the Court in *Hoke* v. *Henderson*, page 20, that if the Legislature should increase the duties and responsibilities, or diminish the emoluments of the office, the officer must submit. Clearly any other rule would subordinate the public welfare to the interest of the officer. He takes subject to the power of the Legislature to change his duties and emoluments as the public good may require.

When the present plaintiff qualified as Clerk, the Constitution of 1868 was in force, and by § 19 of Art IV, the General Assembly was required to provide for the establishment of Special Courts for the trial of misdemeanors in Cities and Towns when the same was necessary. He took his office therefore with a knowledge that the Legislature might establish a Criminal Court substantially the same with that which they did establish by Act of 1876–'77, ch. 271, under the amended Constitution and of which they made the defendant, Clerk.

Having accepted the office on those conditions, he has not been injured and has no right to complain. His case is in principle the same with *Head* v. *The University*, 19 Wall. 526, where the plaintiff was appointed a professor in the University of Missouri, and at the same time the Curators who were the electing body passed a resolution, "That the President and Professors just elected shall hold office for six years from July the 5th, 1856, *subject to law.*" Afterwards the Legislature by an Act vacated the offices of all the professors and provided for an election of others. The phrase "subject to law" was held to mean, subject not only to any law then existing, but also to any which the Legislature might afterwards pass, changing the terms of the offices. In the plaintiff's case, although that particular phrase, or any equivalent, was not expressed in his certificate of election, the idea that his duties and emoluments might be diminished by the establishment of a Criminal Court when the Legislature should think such a Court proper, was necessarily implied both from the Constitution under which he was elected and from that since adopted. If the claim of the plaintiff be well founded, the Legislature could make no change in the laws, no matter how urgently it might be required for the public welfare, which incidently diminished the emoluments of any officer. It could not consolidate two Counties, or divide a single one, or alter the jurisdiction of the Courts. These things have been repeatedly done and the Acts have never been questioned upon the idea that they took away the vested property of the County officers. The Act of one Legislature cannot impair the legislative power of succeeding Legislatures, except by some Act which within the meaning of the Constitution of the United States amounts to a contract. If an Act prescribing the duties and compensation of a public officer can in any case be held to be a contract, with every such officer who may be elected while the Act remains in force, it is a contract subject to the

general law, and therefore containing within itself a provision that such duties and compensation may be changed by any general law whenever the Legislature shall think a change required by the public good. This was said in substance by PEARSON, C J. in *Cotten* v *Ellis*, 7 Jones, 545. The case of *Conner* v *New York*, 1 Seld 285, and other cases cited for defendant, go farther than there is any necessity for us to do for the decision of this case, and we express no opinion as to whether they can be sustained to their full extent or not.

PER CURIAM.    Judgment affirmed.